Donald LeRoy SHUMATE, Joseph Wayne
Shumate, and James Douglas
Brotze, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 11, 1968.

Rehearing Denied Nov. 29, 1968.

John W. Coomes, New Castle, for appellants.

John B. Breckinridge, Atty. Gen., Joseph H. Eckert, Asst. Atty. Gen., Frankfort, for appellee.

EDWARD P. HILL, Judge.

The appeal is from a verdict of guilty and judgment thereon sentencing the appellants to five years each in the state penitentiary on a charge of storehouse breaking under KRS 433.190.

Appellants urge upon us four grounds for reversing the judgment: (1) improper and incompetent evidence was admitted; (2) the trial court erroneously overruled their motion for peremptory instruction; (3) instructions were erroneous; (4) the commonwealth's attorney made improper and prejudicial remarks to the jury.

The evidence disclosed the following facts. On April 23, 1967, at about 4 p.m., the appellants went to a Sunoco Service Station in Shelby County, Kentucky, and purchased some gasoline and paid therefor in coins of small denominations, which they obtained from a small bag in the trunk of their car. That same evening at about 9:30 p.m., the same three appellants returned to the service station on the pretext of desiring to purchase a tire. While the appellant Brotze was talking to an employee about the tire, the two Shumate brothers were in the area of a soft drink vending machine. There was evidence that prior to this time the vending machines were locked. During the time Brotze was talking to the employee, the manager of the station was called to assist in trying to locate the proper size tire. After some time was spent by the three, they came out of the storeroom at which time the Shumate brothers walked slowly to their car, and the three appellants drove away. There was evidence that during the time the appellants were in the service station only one other person was there, and he, a state trooper, arrived only seconds or minutes before the appellants drove away. Only minutes after appellants left the station, the manager noticed that the door to the cigarette machine was slightly open, and thereupon reported it to the state trooper. Without delay the manager and the state trooper started in pursuit of the appellants and overtook them about four miles from town. When stopped, appellants said they would be glad to return to the station. They denied any connection with the opening of the vending machine and requested that their car be searched. When a search was made and nothing found, they were permitted to leave.

An hour or so later the same day, the state trooper, the manager of the service station, an employee, and certain vending machine officials began a search of Highway 1399, which runs from the service station to the highway where appellants were overtaken earlier. Approximately one-half mile from the station, a black bag was found containing 344 vending machine keys, 26 master keys, a Ford motor car key, a bottle of pills, and a depth gauge tool (which is a tool used to make keys for certain vaults). Approximately one mile farther south, two other bags were found containing paper wrappers, one vending

machine tool (used to open vending machines), and $253 in metal coins, consisting entirely of nickels, dimes, and quarters.

A "stakeout" or watch was made on Highway 1399 that night, which produced nothing. But the vigil was continued the following morning, and between 7 and 9 a. m., the appellant Joseph Shumate was seen by several witnesses walking along the highway where the evening before the bags had been found. Appellants explained their presence in the vicinity by saying they were looking for a "lost hubcap," but one of them stated that they were "out for fresh air." There was evidence that when cars drove by appellant Joseph Shumate, he would turn his back to them. When a state trooper driving along the highway approached the car carrying the other two appellants, the driver turned his head and the "other appellant laid down in the back seat." (On April 23, the appellants were driving a Lincoln Continental. On the following morning when they were seen on Highway 1399, they were driving a 1960 Chevrolet automobile.) Appellants were again taken to the service station, where they gave written consent for a search of their automobile. Nothing was found except some leaves from a notebook which contained numbers of various locks corresponding with the numbers on certain vending machine keys.

Appellants' attack upon evidence admitted on the trial categorizes it as "incompetent, remote, and prejudicial." It is said that the first black bag found was in a location too remote from the scene of the crime to be competent.

■ The question of remoteness of evidence is one of degree, a relative concept with no fixed standard. What is or is not remote depends upon the facts of each case. Considering the time the bags were found, where they were found with relation to the highway over which appellants admittedly traveled, the nature and description of the contents of the bags, and the very peculiar nature of the crime with which

appellants are charged, it cannot be said that the evidence in regard to introduction of the bags and their contents was too remote for competency.

■ Appellants complain that the introduction of evidence that "pills" were found containing barbiturates inflamed the minds of the jury against them, and their introduction in no way connected them with the crime. There was no evidence that any one of the appellants was under the influence of drugs at any of the times in question.

■ Appellants next contend that it was error to permit the nonexpert witness Cal Schmidt to testify concerning a tool found with the money bags. We are not persuaded that the evidence of a nonexpert witness would not have been competent under the circumstances. In any event, the qualification of this witness was a question within the sound discretion of the trial judge, and his decision will not be disturbed unless there was a manifest abuse of discretion. Commercial Union Assur. Co. v. Howard, 256 Ky. 363, 76 S.W.2d 246; Kentucky Power Co. v. Kilbourn, Ky., 307 S.W.2d 9; Boehm v. Hishmeh, Ky., 421 S.W.2d 836; Gates v. Gates, Ky., 412 S.W.2d 223.

■ We find appellants' next argument wholly without merit. It questions the admission of evidence obtained from the Chevrolet car in the form of leaves from a notebook which contained the numbers of keys used to open vending machines without first introducing the written consent of the appellants to search their car. The written permission in question was later introduced in evidence, which we think cured any techincal error, if we may dignify the occurrence as a tehnical error. Cf. Adrian v. McGillivray, Ky., 243 S.W.2d 895.

■ Appellants' argument that the trial court erred in overruling the motion for a peremptory instruction to find them not guilty at the conclusion of all evidence is

predicated on the idea that the evidence was all circumstantial and too remote to sustain a conviction. It must be remembered from the facts heretofore set out that the evidence upon which appellants were convicted was circumstantial; nevertheless, we must conclude that it was strong circumstantial evidence. Cf. Cissell v. Commonwealth, Ky., 419 S.W.2d 555, 557, wherein this court quoted the rule as follows:

" 'When the evidence, even though it be circumstantial, affords fair and reasonable ground upon which the verdict of a jury might be rested, the case should go to the jury. It is only where the testimony in behalf of the commonwealth fails to incriminate the accused, or is wholly insufficient to show guilt, that an accused is entitled to a peremptory instruction.' "

We conclude that the facts in the present case raised more than a "mere suspicion" of guilt and satisfied the requirement of the rule announced in *Cissell*.

■ Appellants present a forceful argument that they were entitled to a peremptory instruction on the ground that the indictment did not state an offense and is at variance with the proof upon the theory that a vending machine is not a storehouse or a warehouse within the meaning of KRS 433.190. Our research has not disclosed a case in this or any other jurisdiction in which this specific question has been answered. The appellants rely upon Mason v. Commonwealth, 101 Ky. 397, 41 S.W. 305, and Wilson v. Commonwealth, 174 Ky. 602, 192 S.W. 631. In the latter case, the room broken into was a small wine cellar, and this court held that the wine cellar was not a storehouse within the meaning of the *supra* statute.

In undertaking a proper construction of KRS 433.190, it is interesting to keep in mind that this statute was enacted in 1893 when vending machines were unknown. It is also of some historic interest to note

that the Rules of Criminal Procedure have undergone some change from the strict technical rule of construction to a somewhat modified, more liberal, practical construction. Vending machines contain merchandise for sale; and in lieu of a living, breathing individual to make change, they are provided with electrical cashiers and change makers. They have many of the characteristics of the county store completely modernized, prepackaged, with all the labor saving devices built in. They are kept locked. The fact that they are movable, unlike a permanent structure, should not be a controlling factor in determining what a storehouse is; that they do not have roofs but are enclosed in metal cabinets should not be important. The whole purpose of the statute was to protect property owners in the enjoyment of their property, and it has survived nearly seventy-five years without modification.

In the early case of Webb v. Commonwealth, Ky., 35 S.W. 1038, this court decided that a livery stable was a storehouse or a warehouse within the meaning of KRS 433.190. Also in the case of Hunter v. Commonwealth, Ky., 48 S.W. 1077, this court concluded that an opera house used to store stage properties was a warehouse within the contemplation of KRS 433.190. Hence the indictment charges an offense, and the trial court was correct in overruling appellants' motion for a peremptory instruction.

■ Appellants complain there was no proof of "breaking and entering." The proof showed the door of the vending machine was locked immediately before appellants arrived and that immediately after their departure the door was open. The evidence clearly showed the two Shumate men were around and about the machine. This was sufficient to support the verdict finding that appellants broke and entered.

Appellants complain that there was a variance between the charges of the indictment and the instructions given by

the court. But this argument is predicated upon the argument that a vending machine is not a storehouse, and our conclusion heretofore provides the answer to this argument. The instructions substantially follow the indictment. Perry v. Commonwealth, 295 Ky. 317, 174 S.W.2d 422, and Whitaker v. Commonwealth, 188 Ky. 95, 221 S.W. 215, 10 A.L.R. 145.

Appellants further contend that the indictment is defective in that it failed to specify that the vending machine belonged to the Coca-Cola Bottling Company instead of the Sunoco Service Station. Certainly the vending machine was in the possession of the Sunoco Service Station. This we think was sufficient. The ownership of the vending machine was not in issue. Horn v. Commonwealth, 289 Ky. 600, 159 S.W.2d 417, and Blair v. Commonwealth, 221 Ky. 283, 298 S.W. 699.

Appellants' last and final argument is directed to the closing argument of the commonwealth's attorney. They state that it was improper and prejudicial to their substantial rights. In his closing argument, the Commonwealth's attorney made the following statements to the jury:

> "The lock was broken, and I tell you, Gentlemen, those three men broke it with intent to steal therefrom, in my opinion, because they have done it before and will do it again. * * * But I tell you that if I have ever seen a case where all the facts dove-tail and point to the defendants, these three professionals broke and entered."

We readily agree that a portion of this argument was improper, and we condemn such arguments. The argument implies that appellants "have done it before and will do it again" and that appellants are "three professionals." There was no evidence that any one of the appellants had ever committed like or similar crimes or that they are professionals, unless it be said that the possession of such a large amount of small change, the great quantity of keys,

and records of key and lock numbers would justify such a conclusion. Possibly a fair-minded person would so conclude. Perhaps the jury did conclude from these facts that appellants had committed other similar crimes and that they were professionals.

Appellee contends these statements by the commonwealth's attorney were reasonable inferences from the evidence, and even if improper, were not prejudicial to appellants. We are inclined to the belief that the argument complained of, though improper, was not prejudicial before the jury. Hollon v. Commonwealth, Ky., 325 S.W.2d 340; Caudill v. Commonwealth, 239 Ky. 712, 40 S.W.2d 334; Welch v. Commonwealth, 189 Ky. 579, 225 S.W. 470; and Jones v. Commonwealth, Ky., 281 S.W.2d 920.

The judgment is affirmed.

All concur.